**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re: <br><br> CHANTEL M. BASILE <br><br><br> Debtor <br><br> DAVID M. NICKLESS, CHAPTER 7 TRUSTEE <br><br> Plaintiff <br><br> v. <br><br> GAETANO DISTEFANO, MARCUS DISTEFANO, AND ROSARIO MOTTA <br><br> Defendants | Chapter 7 <br> Case No. 10-40850  -MSH <br><br><br><br><br><br><br><br> Adversary Proceeding <br> No. 10-4101 |

**MEMORANDUM AND ORDER ON GAETANO DESTEFANO AND MARCUS DISTEFANO'S REQUEST FOR JURY TRIAL**

Defendants, Gaetano DiStefano and his son, Marcus DiStefano, have claimed the right to a jury trial on the multi-count amended complaint of the plaintiff, David M. Nickless, the Chapter 7 trustee of the estate of Chantel M. Basile, the debtor in the main case. The trustee disagrees with the defendants' assertion of a jury trial right and in the alternative requests that if they are so entitled, the jury trial be conducted in the bankruptcy court. This latter request is easily disposed of because, although the bankruptcy court in this district may conduct jury trials, it may not do so without the express consent of all the parties. *See* 28 U.S.C. § 157(e); LR, D. Mass 202; and M.L.B.R. 9015-1. The defendants do not consent.

1

**Background**

The trustee's amended complaint alleges the following facts.

The debtor and Gaetano DiStefano agreed that they would purchase for investment the property located at 119 Pleasant Valley Street in Methuen, Massachusetts. In April 2007 the debtor purchased the Methuen property for $250,000. She made a down payment of $50,000 and received a mortgage loan for the balance from the Provident Funding Group, Inc. Only the debtor is obligated on the Provident loan. The debtor and Gaetano[1] were to share the profits from the Methuen property taking into consideration the debtor's down payment. A little over a year after the purchase, the debtor transferred title to the Methuen property to Gaetano for $100. Gaetano executed an agreement to indemnify the debtor for any losses she might suffer as a result of the Provident loan. According to the trustee, Gaetano continues to benefit from the use of the Methuen property and its rental income although the complaint does not make it clear whether Gaetano has been using the rental income to make payments on the Provident note upon which the debtor remains obligated.

In July 2007 Gaetano induced the debtor to loan $20,000 to him and his friend, defendant Rosario Motta, whom the debtor did not know, so that Gaetano and Ms. Motto could purchase real estate in North Andover, Massachusetts. Apparently, Gaetano did not want his name associated with the property so the check was payable only to Ms. Motta. The $20,000 debt of Ms. Motta and Gaetano remains outstanding.

---

[1] I will refer to the DiStefano defendants by their first names for ease of identification.

2

In October of the same year, the debtor paid $15,000 to Regan Ford on behalf of Gaetano's son, defendant Marcus DiStefano, so that Marcus could buy a 2008 Ford SUV. The debtor, Gaetano and Marcus agreed that the $15,000 was a loan, not a gift. The loan remains outstanding.

In November 2007 the debtor loaned Gaetano $2,700 and in August 2008 she loaned him another $6,297.49. None of this money has been repaid.

The trustee's amended complaint asserts the following causes of action:

- Count I against Gaetano for fraudulent transfer pursuant to Bankruptcy Code § 548(a)(1) in which the trustee seeks to recover the Methuen property or the value of the property;

- Count II against Gaetano for fraudulent transfer pursuant to Mass. Gen. Laws ch. 109A §§ 5 and 6 in which the trustee also seeks to recover the Methuen property or the value of the property;

- Count III against Marcus for fraudulent transfer pursuant to Mass. Gen. Laws ch. 109A §§ 5 and 6 for recovery of the Ford SUV or its value;

- Count IV against all defendants for breach of contract based on their refusal to repay any of the loans for which the trustee seeks money judgment in the amount of all loans, plus interest, including the down payments on the Methuen and North Andover properties;

- Count V against Gaetano for breach of his agreement to indemnify the debtor in which the trustee seeks a money judgment in the amount of the down payment on the Methuen property plus interest;

3

- Count VI against all defendants pursuant to Bankruptcy Code § 542(b) for "turnover" of the money loaned by the debtor, namely those amounts identified in count IV;

- Count VII against Gaetano for a declaratory judgment that title to the Methuen property is held in a constructive trust for the benefit of the debtor's estate; and

- Count VIII against Marcus for a declaratory judgment that title to the Ford SUV is held in a constructive trust for the benefit of the debtor's estate.

The trustee requested and obtained a default judgment in the amount of $20,000 plus interest against Ms. Motta.

**Discussion**

A party's right to a jury trial in federal court is governed by federal law. *Edwards v. Eastman Outdoors, Inc.* (*In re Game Tracker, Inc.*), 2011 WL 5117569, at *1 (D. Me. Oct. 24, 2011) (citing 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2302 (3d ed. 2008). "A right to a jury trial in federal court must arise out of the Seventh Amendment [to the United States Constitution] or be granted by a federal statute." *Washington Intern. Ins. Co. v. U.S.*, 863 F.2d 877, 878 (Fed. Cir. 1988). In the present case there is no assertion of a statutory basis for the right to a jury trial; instead if a right exists it must emanate from the Seventh Amendment.

The Seventh Amendment provides a right to trial by jury in "suits at common law" where the amount in controversy exceeds twenty dollars. The Supreme Court has defined the phrase "suits at common law" to refer to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and

4

equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).

In *Granfinanciera* the Court articulated a three-part test for determining whether the right to a jury trial exists. The first consideration is whether the party seeking a jury trial would have been entitled to one in eighteenth century English courts of law before the merger of law and equity courts. Second, courts must determine whether the remedies sought are legal rather than equitable in nature. It is this determination, which the Supreme Court describes as more important than the first, that generally dictates the outcome of a jury demand. Simply stated, claims which seek legal remedies generally implicate the constitutional right to a jury trial while those sounding in equity or admiralty do not. This characterization of a claim as legal or equitable is governed by federal law, even when the claim is based on a state-created right. *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609 (1963). Finally, even if a party would have a right to a jury trial under the first two prongs of the *Granfinanciera* test, courts must determine if the cause of action asserted involves public rather than private rights the adjudication of which Congress assigned to tribunals without authority to conduct jury trials. *Granfinanciera*, 492 U.S. at 42 & n.4, 109 S.Ct. at 2790 & n.4. Congress, however, may not convert private causes of action into public ones thereby depriving litigants of the right to trial by jury. *Id.* at 51-52; 109 S.Ct at 2795.

When an action involves a combination of both legal and equitable claims, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether,* 415 U.S. 189, 196 n.10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Consequently facts common to legal and equitable claims must be adjudicated by a jury. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The right to a trial by jury

5

must be preserved even if the legal claims are characterized as incidental to the equitable claims. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473 n.8, 82 S.Ct. 894, 897 n.8, 8 L.Ed.2d 44 (1962). In such instances a court may not try the equitable claims first because to do so would subject the jury's findings to the principles of collateral estoppel. *Id*. at 479. Because protection of the right to trial by jury is so important, "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Beacon Theatres,* 359 U.S. at 510–11. S*ee also Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc.,* 2012 WL 837313, at *13 (D. Mass. May 4, 2012).

>Moreover, as the *Dairy Queen* Court explained,
>
>[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is ... the absence of an adequate remedy at law.

*Id.* at 477-478, 82 S.Ct. at 900. Therefore, courts must look behind the labels placed on the causes of action in the complaint as well as the causes of action themselves to determine if a remedy in equity is needed to address the alleged harm. *Id.*

Except for instances not relevant here,[2] the right to trial by jury is not lost simply because an action is asserted in the bankruptcy court, even in a matter designated by Congress as core under 28 U.S.C. § 157(b). *Granfinanciera*, 492 U.S. at 60-61*; Commerce Industry Insurance Co. v. E.I.*

---

[2] There is no allegation that the defendants have waived their right to a jury trial if one exists. Their jury demand was filed with their joint answer to both the original and amended complaints and is thus timely. M.L.B.R. 9015-1; *In re Bank of New England*, 360 B.R. 1, 5 (D. Mass. 2007). The defendants have not filed proofs of claim in the main bankruptcy case nor have they asserted any counterclaims against the trustee. *Langenkamp v. Culp*, 498 U.S. 42, 45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (by filing a proof of claim, creditor submitted to the bankruptcy court's equitable jurisdiction); *Granfinanciera*, 492 U.S. at 58, 109 S.Ct. 2782, 106 L.Ed.2d 26; *Container Recycling Alliance v. Lassman*, 359 B.R. 358, 360-61 (D. Mass. 2007).

*Du Pont De Nemours & Co. (In re Malden Mills Industries, Inc.*), 277 B.R. 449, 455 n.4 (Bankr. D. Mass. 2002).

With these principles in mind, I turn to an examination of the claims raised in the trustee's amended complaint.

A. <u>Fraudulent Conveyance Claims — Real and Personal</u>

In *Granfinanciera* the Supreme Court held that a defendant who has not filed a claim against a bankruptcy estate has a Seventh Amendment right to a trial by jury in a trustee's suit to set aside a fraudulent conveyance either where money damages in a "determinate sum" are sought, 492 U.S. at 36, 109 S.Ct. at 2787, or where the transfer of personal property is sought to be avoided. *Id.* at 44, 109 S.Ct. at 2791. ("If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee today as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.") *Id.* (internal citation omitted). Congress may not convert this private cause of action into a public one thereby sabotaging the right to a trial by jury. *Id.* Finally, although recognizing that whether a bankruptcy trustee's right to recover a fraudulent transfer under Bankruptcy Code § 548(a)(2)[3] "admits of some debate," the Court held that such an action "seems to us more

---

[3] Section 548(a)(2) of the Bankruptcy Code applicable in *Granfinanciera* appears in the current Bankruptcy Code as § 548(a)(1)(B).

accurately characterized as a private right rather than a public right as we have used those terms in our Article III decisions. *Id.* at 55, 109 S.Ct. at 2798.

Thus, with respect to the trustee's cause of action against Marcus for recovery of the Ford SUV asserted in Count III of the amended complaint, Marcus has a right to a jury trial.

As suggested by the Supreme Court's analysis discussed above, when it comes to fraudulent conveyance actions to avoid the transfer of and to recover real estate the determination of whether a defendant has the right to a jury trial is not clear-cut. In *Resolution Trust Corp. v. Pasquariello (In re Pasquariello)*, 16 F.3d 525 (3d Cir. 1994), an action for mandamus in which the district court refused to withdraw the reference in an adversary proceeding seeking to set aside the fraudulent transfer of real property between spouses, the U.S. Court of Appeals for the Third Circuit noted that prior to the Supreme Court's *Granfinanciera* decision, all U.S. courts of appeals, including the U.S. Court of Appeals for the First Circuit,[4] which considered the issue held that "any attempt to remedy a fraudulent conveyance of real property through a set aside or avoidance was a matter for the equity courts and that no right to a jury trial attached." *Pasquariello*, 16 F.3d at 530. While acknowledging that since *Granfinanciera*, some lower courts have found that the right to jury trial arises in actions to avoid fraudulent transfers of real property, the Third Circuit in *Pasquariello* noted that historically both courts of law and equity exercised jurisdiction over fraudulent conveyance actions involving land. *Id.* at 529.

> An action to recover possession of real property, often known as ejectment, was an action at law. *See id.; see also Pernell v. Southall Realty,* 416 U.S. 363, 373, 94

---

[4.] *Whitlock v. Hause*, 694 F.2d 861 (1st Cir. 1982).

> S.Ct. 1723, 1728, 40 L.Ed.2d 198 (1974) ("by a variety of intricate fictions, ejectment eventually developed into the primary means of trying either the title to or the right to possession of real property"); *Amoco Oil Co. v. Torcomian,* 722 F.2d 1099, 1103 (3d Cir.1983) (ejectment is an action at law). On the other hand, an action to set aside a fraudulent conveyance of real estate was usually heard in equity. *See Granfinanciera,* 492 U.S. at 44-46, 109 S.Ct. at 2791-2792; *Hobbs v. Hull,* 1 Cox 445, 29 Eng.Rep. 1242 (Ch. 1788) (suit to set aside a conveyance of land in trust by husband to his wife may be adjudicated in court of equity); 1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 98 (rev. ed. 1940); 3 John N. Pomeroy, *Pomeroy's Equity Jurisprudence* § 968 (Spencer W. Symons, ed., 5th ed. 1941). Thus, unlike *Granfinanciera,* this cause of action's historical antecedents provide little guidance.

*Id.* at 530-31. The court went on to distinguish *Granfinanciera* because it involved the alleged fraudulent conveyance of money, a fungible commodity lacking the uniqueness of land.

In this adversary proceeding, the trustee seeks recovery not just of a sum certain but of the allegedly fraudulently conveyed property itself. In other words he seeks both legal and equitable remedies, albeit in the alternative.[5]

As the Supreme Court noted in *Granfinanciera*, "actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England." *Id.* at 43, 109 S.Ct. 2782. To the extent that a trustee seeks money damages as compensation for an allegedly fraudulent transfer, this remedy is aptly characterized as legal rather than equitable in nature.

Some courts have held that actions to avoid the transfer of real property are equitable in nature and thus there is no right to a jury trial, *see e.g., Campana v. Pilavis (In re Pilavis)*, 228 B.R. 808 (Bankr. D. Mass. 1999), while others have reached the opposite conclusion. *See, e.g., Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 869 & n.12 (Bankr. N.D. Ill. 2006).

---

[5] The trustee's prayers for relief with respect to both the federal and state law fraudulent conveyance counts (I and II) request, among other things, a declaration that the transfer of the Methuen property was fraudulent and an order avoiding the transfer or in the alternative a money judgment, in an amount to be determined, for the value of the property plus interest, attorney's fees and costs.

9

I agree with Judge Hillman's analysis in *Pilavis* and the Third Circuit's analysis in *Pasquariello* that when the fraudulent conveyance remedy requested is to avoid the transfer of real property, a trial by jury is not mandated by the Seventh Amendment. But here the trustee has included within his fraudulent transfer counts, demands for money judgment as an alternative to avoidance of the transfer. "Even if the plaintiff seeks a money judgment based on an equitable claim, the claim is generally considered legal in nature." *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 883 (Bankr. M.D.N.C. 2011) (internal citation omitted). Further, the Supreme Court in *Dairy Queen* instructs that the right to a jury trial must be preserved even if the legal claims are characterized as incidental to the equitable claims as they clearly are with respect to the real estate fraudulent conveyance claims here.

Even if I were able to overlook the alternative request for damages in Counts I and II of the trustee's amended complaint and conclude that the trustee is seeking the return of the real estate, there are additional counts asserted in this action that without question trigger the right to a jury trial.

B. Breach of Contract Claims

The trustee has asserted breach of contract claims that traditionally were actions at law that would have been brought in English law courts in 1791. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 569–70, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). He seeks monetary damages, clearly a remedy at law. Moreover "claims for breach of contract are private, state-law causes of action as to which Congress lacks the power to eliminate the right to a trial by jury." *Freeway Foods*, 449 B.R. at 884. Therefore the defendants are entitled to a jury trial on Counts IV and V of the amended complaint. *Lars, Inc. v. Taber Partners (In re Lars, Inc.)*, 290

10

B.R. 467, 469-70 (D. Puerto Rico 2003); *Aaron Gleich, Inc. v. Housing Authority of City of New Haven (In re Aaron Gleich, Inc.)*, 200 B.R. 464, 466 (Bankr. D. Me. 1996) (no right to jury trial in action involving debtor's counterclaims to city's proof of claim but noting that absent the filing of the proof of claim, the breach of contract claim is legal triggering right to jury trial).

C. Equitable Claims

A statutory turnover action under Bankruptcy Code § 542 does not trigger a right to trial by jury. *Braunstein v. McCabe*, 571 F.3d 108, 115 (1st Cir. 2009).

> Commanding turnover is at the very root of the bankruptcy court's equitable powers. *See* 11 U.S.C. § 542. If it has been established that certain assets are a part of the bankruptcy estate, there must be some mechanism for acquiring control of them. Requiring turnover is merely the bankruptcy court's means of enforcing its decisions, and it is therefore equitable in nature."

*Walker v. Weese*, 286 B.R. 294, 299 (D.Md. 2002) (footnote omitted). Therefore, Count VI of the amended complaint if viewed in isolation, would not be tried to a jury.

A constructive trust is an equitable remedy and thus usually no right to a jury trial attaches. *Goya Foods, Inc. v. Unanue*, 233 F.3d 38, 48 (1st Cir. 2000); *Notinger v. Brown (In re Simply Media, Inc.)*, 2007 WL 4264514, at *5 (Bankr. D.N.H. Nov. 28, 2007). While "[a]n action seeking to impose a constructive trust is equitable in nature and will not ordinarily give rise to a right to jury trial," a right to a trial by jury attaches if the action "is essentially one to collect a debt." *Redmond v. Hassan (In re Hassan)*, 376 B.R. 1, 19 (Bankr. D. Kan. 2007) (quoting 8 MOORE'S FEDERAL PRACTICE, § 38.31[2]). In the instant case the equitable claims in Counts VII and VIII may be fairly characterized as claims asserted to collect various debts that the trustee asserts are owed to the estate.

11

Moreover, the facts relevant to the equitable counts are the same as those relevant to the legal claims. Thus even if the equitable claims are triable without a jury, I cannot hold a bench trial on Counts I, II, VI, VII, and VIII before the counts asserting legal claims are determined by a jury. *Dairy Queen,* 369 U.S. at 479; *Beacon Theatres,* 359 U.S. at 510-11; *Simply Media*, 2007 WL 4264514, at *5. Consequently "the action must be structured and tried in a manner that preserves the right to jury trial with respect to the legal claim" and issues of common facts must be tried to a jury with the bankruptcy court being bound by those findings." *Simply Media*, 2007 WL 4264514, at * 5.

**[Remainder of page intentionally blank]**

**Conclusion**

For the foregoing reasons, I find that the defendants are entitled to a jury trial on Counts I, II, III, IV and V of the trustee's amended complaint and that the relevant facts raised in those counts are common to the equitable counts, VI, VII and VII. Therefore, the action must be tried to a jury before any judgment can be entered on Counts VI, VII and VIII. To avoid the potential jurisdictional infirmity raised in *Wilson v. EMC Mortg. Corp. (In re Wilson)*, 2005 WL 3320594 (Bankr. D. Mass. Oct. 17, 2005), namely that there is no procedure for the bankruptcy court to initiate withdrawal of the reference by the district court, I will order the defendants to file a motion to withdraw the reference within ten days of this order's becoming final.

So ordered.

Dated: June 4, 2012
By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge